Michael F. Ram, CSB #104805
MORGAN & MORGAN
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
Email: mram@forthepeople.com
Attorneys for Plaintiff

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CHARLES PATRICK HARVEY,<br><br>        Plaintiff,<br><br>    v.<br><br>COINBASE, INC.,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY DEMAND REQUESTED** |

CHARLES PATRICK HARVEY, Plaintiff herein, by his attorneys, alleges and complains of Defendant as follows:

**PRELIMINARY STATEMENT**

1.  Charles Patrick Harvey ("Plaintiff or "Mr. Harvey") is a victim of identity theft.

2.  The perpetrator, who is unknown to Plaintiff, unlawfully transferred almost $50,000 out of his Coinbase account (the "Account").

3.  Plaintiff immediately and repeatedly disputed the charges with Coinbase, Inc. ("Defendant" or "Coinbase").

4.  The last of the unauthorized transactions, for $1,000, happened after Plaintiff had informed Coinbase of the fraud and sought to have his account locked.

COMPLAINT - 1

5.  Despite its obligation under Federal and state laws to promptly credit Plaintiff's account in full, Coinbase has refused to credit Plaintiff's account for the stolen funds.

6.  Plaintiff brings claims against Coinbase for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; Article 4A of the California Uniform Commercial Code; the Rosenthal Fair Debt Collections Practices Act, Civil Code §1788, *et seq.* (the "Rosenthal Act"); and California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.* (the "UCL").

**JURISDICTION AND VENUE**

7.  The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

8.  This Court also has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and an amount in controversy greater than $75,000.

9.  Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

10. Venue is proper in this District because Defendant's headquarters are in this District and a substantial part of the events and occurrences underlying this litigation occurred within this District.

**PARTIES**

11. Plaintiff is a natural person and citizen of Georgia residing in McDonough, Georgia.

12. Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6). His account with Coinbase was used for personal, family, or household purposes.

13. Coinbase, Inc. is "financial institution" formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

14. Coinbase's headquarters are in San Francisco, California.

COMPLAINT - 2

**FACTS**

15.     Plaintiff created his Coinbase Account on or about March 2021 via his mobile device and accessed it exclusively through his mobile device from that time until after the fraud described herein.

16.     At the time Mr. Harvey opened his account and at all relevant times thereafter, his mobile device was an Apple iphone.

17.     On Saturday evening, July 31, 2021, Plaintiff's phone received a text from his mobile carrier, Verizon Wireless, on Saturday, July 31, 2021 at 7:20 p.m. The text asked whether Mr. Harvey was transferring his number to another carrier and providing a website url "to get the PIN you need to transfer".

18.     Immediately thereafter, Plaintiff's phone received another text from Verizon stating: "We just generated a Number Transfer PIN for the mobile numbers on your account. If you didn't request this please type CANCEL now."

19.     Mr. Harvey responded that same evening, twice texting "Cancel" in response to the messages from Verizon.

20.     The first of those texts was sent to Verizon at 8:49 PM Eastern.

21.     Mr. Harvey's cell phone number was nevertheless ported over to a T-Mobile account by criminals and assigned to a new Android device that was not his, all without his consent.

22.     That same evening, using the Android device, thieves hacked into Mr. Harvey's Coinbase account, reset his Coinbase password, and drained substantially all of the funds -- approximately $48,000 -- out of the account by means of six fraudulent transfers.

23.     According to Coinbase's subsequent communications with Mr. Harvey, the six fraudulent transfers occurred within a six-minute span, starting at 8:50 PM Eastern.

24.     That same evening, Plaintiff received a transaction email from Coinbase that he did not make or authorize anyone else to make.

COMPLAINT - 3

25. Plaintiff immediately contacted Coinbase support about the identity theft and unauthorized transfers.

26. Defendant responded by temporarily locking the account and sending instructions on how Plaintiff could reset his password.

27. Plaintiff went through the steps provided, yet never received the password reset email.

28. Mr. Harvey spent the next several days unable to access his account despite his efforts to reset his password.

29. On August 2, 2021, Plaintiff reported the identity fraud to the police.

30. Between July 31, 2021 and August 9, 2021, Mr. Harvey repeatedly disputed all of the charges with Coinbase both over the phone and in writing.

31. On August 3, 2021, Defendant informed Plaintiff via email that his account was "disabled by our security team as a result of potentially suspicious activity."

32. That same email stated that Coinbase's records indicated the account was accessed by an "attacker" using an Android device with a different IP address, "using a Coinbase android application."

33. Coinbase's email went on to disclaim any responsibility for the hacking of its customers' accounts, stating: "Please note you are solely responsible for the security of your e-mail, your passwords, your 2FA codes, and your devices."

34. On August 4, 2021, after Mr. Harvey had already reported the fraudulent activity to Coinbase and despite Coinbase locking his Account, Plaintiff received an email from Coinbase stating that an unsuccessful transfer of $1,000.00 had been attempted on July 31, 2021 and that if the Plaintiff did not complete the payment in 5 days, the Defendant would initiate an "automatic recovery, which could include selling" Mr. Harvey's cryptocurrency holdings.

35. Plaintiff reached out to Coinbase on August 4, 2021, inquiring how this transaction was processed despite Coinbase locking the account on July 31, 2021.

COMPLAINT - 4

36. On August 9, 2021, Defendant informed Plaintiff via email that the unauthorized transfers are irreversible and that "there is no way for Coinbase to cancel, reverse, or recover these funds on your behalf."

37. In Defendant's August 6th and 9th emails to Plaintiff, Coinbase cited Sections 4.8 and 4.9 of a "User Agreement" for the policies stated in its emails.

38. The Coinbase User Agreement that nominally governs U.S. accounts does not have a section 4.8 or 4.9.

**FIRST CLAIM FOR RELIEF**

**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*)**

39. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

40. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Coinbase bears the responsibility for unauthorized withdrawals. *See* 1693g, *et seq*.

41. In addition, once Plaintiff notified Coinbase that his phone had been compromised, Coinbase had an obligation to cancel the transfers and freeze the Account to prevent further unauthorized charges.

42. Coinbase failed to reimburse Plaintiff for the unauthorized transfers and failed, even after being notified of the fraud, to refuse and cancel a subsequent fraudulent transfer.

43. Moreover, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

44. This burden of proof cannot be and was not plausibly met with regard to the contested transactions, and Defendant could not have plausibly concluded that the transfers were authorized. Indeed, Coinbase acknowledged the transactions were unauthorized.

45. Coinbase sent an email on August 9, 2021 to Plaintiff, in which Coinbase denied Plaintiff's dispute but failed to notify Plaintiff of his right to receive all supporting documentation relied upon by Defendant to reach its decision, as required under the EFTA.

COMPLAINT - 5

46. Coinbase violated the EFTA § 1693f(d) by issuing written dispute denials that do not inform consumers of their rights to the documentation upon which Coinbase relied to reach its decision.

47. Coinbase's acts and omissions set forth above violate the EFTA.

48. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to an award of actual damages, statutory damages, attorney's fees and costs.

49. Coinbase did not have a reasonable basis for believing the account was not in error. *See* EFTA § 1693f. Coinbase willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Coinbase at the time of the investigation.

50. In light of the foregoing, and in addition to all other relief sought herein, Plaintiff is also entitled to recover treble damages under Section 1693f(e).

## SECOND CLAIM FOR RELIEF

### (California UCC Article 4A)

51. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

52. Pursuant to UCC § 4-A-202(1), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

53. UCC § 4-A-202(2) further provides:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if
>
> (a) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and

COMPLAINT - 6

    (b) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

54. Coinbase failed to establish and/or follow a commercially reasonable security procedure with regard to Plaintiff's Account.

55. Specifically, Coinbase's security procedure fails to flag and hold obviously fraudulent and unauthorized transactions such as the ones at issue here.

56. The unauthorized transactions on Mr. Harvey's Account bore a series of characteristics that, when taken together, render the transactions suspect, and likely to be fraudulent.

57. For example, and without limitation, the transactions:

  a. were entirely out of character with Plaintiff's history of account usage;

  b. drained the Account negative;

  c. occurred within a six-minute time span;

  d. occurred on a new device not previously associated with the Account;

  e. occurred via a new IP address not previously associated with the Account;

  f. occurred on a new type of device (an Android as opposed to an Apple device);

  g. occurred immediately after the password on the account was reset; and

  h. occurred without facial recognition, which had previously been activated continuously on Mr. Harvey's Account.

58. Any commercially reasonable policy would have assessed this combination of troubling factors, flagged the transactions as suspect, and held or rejected the transactions as likely to be fraudulent.

COMPLAINT - 7

59. Indeed, Coinbase acknowledged the suspicious and unauthorized nature of these transactions based on this same information – all of which was available to it at the time of the transactions – but only after it processed the transfers.

60. Coinbase also did not process the transfers in good faith. Specifically, Coinbase's willful blindness to the many badges of fraud present here constituted bad faith acceptance of the unauthorized payment orders.

61. In sum, Coinbase violated UCC § 4-A-202 by accepting unauthorized payment orders in connection with Plaintiff's Coinbase account, failing to establish and/or follow commercially reasonable security procedures, and not processing the transactions in good faith.

62. Plaintiff is therefore entitled to a refund of the full amounts of the unauthorized payment orders, plus interest.

**THIRD CLAIM FOR RELIEF**

**(Violation of the Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788, *et seq*.)**

63. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

64. The California Legislature enacted the Rosenthal Act in 1976 to ensure the integrity of the banking and credit industry. Civil Code §1788.1(b).

65. The Legislature found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Civil Code §1788.1(a)(2).

66. Coinbase at all times relevant herein was a "debt collector" within the meaning of Civil Code § 1788.2(c). Coinbase regularly and in the ordinary course of business, on behalf of itself or others, engages in acts and practices in connection with the collection of consumer debt. Coinbase had a non-delegable duty under the Rosenthal Act not to commit violations of the Rosenthal Act, and not to allow its agents to commit such violations, which duties Coinbase itself was prohibited from violating.

67. Coinbase has attempted to collect $993.42 from Plaintiff for the amount his Account is negative due to fraudulent transactions Plaintiff did not make (the "Fraudulent Debt").

68. The Fraudulent Debt is "consumer debt" within the meaning of Civil Code §1788.2(f).

69. Plaintiff is a "debtor" within the meaning of Civil Code §1788.2(h) in that he is a natural person from whom Coinbase seeks to collect a consumer debt alleged to be due and owing.

70. Coinbase attempted to collect the Fraudulent Debt from Plaintiff by, among other things, conducting collection efforts, making demands for payment, and sending communications regarding further collections of the Fraudulent Debt.

71. Coinbase made false representations to Plaintiff that he owed the Fraudulent Debt, stating that Plaintiff was obligated to pay the Fraudulent Debt when he was not, and demanding payment for the Fraudulent Debt in violation of Civil Code §1788.17 (through violation of 15 U.S.C. §1692e, including §1692e(2)).

72. Coinbase attempted to collect on a debt that is not permitted by law by attempting to collect on the Fraudulent Debt. Coinbase's conduct violated 15 U.S.C. § 1692f, including §1692f(1), incorporated into the Rosenthal Act by Civil Code § 1788.17.

73. As a proximate result of Coinbase's violations of the Rosenthal Act, Plaintiff has been damaged and is entitled to recover his actual damages pursuant to Civil Code § 1788.17.

74. Coinbase's violations of the Rosenthal Act were willful and knowing, thereby entitling Plaintiff to recover statutory damages pursuant to Civil Code § 1788.17.

75. Plaintiff is further entitled to recover attorney's fees and costs pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(3), or in the alternative, Civil Code §1788.30(c).

### FOURTH CLAIM FOR RELIEF

**(Violation of Business & Professions Code §17200, *et seq*.)**

76. Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

77. Defendant engaged in unfair acts and practices with respect to its services by denying transactions alleged to be unauthorized without first conducting a reasonable inquiry; by denying transactions alleged to be unauthorized despite finding that the transactions were unauthorized; by denying transactions alleged to be unauthorized that it has no legitimate basis to conclude were authorized; by denying requests to reverse unauthorized transactions without notifying the accountholder of the accountholder's right to reproductions of all documents on which it relied in reaching its decision; and by establishing sub-standard security practices and procedures described herein.

78. The acts and practices complained of herein constitute unfair business practices because they are immoral, unethical, oppressive, unscrupulous, unconscionable, substantially injurious to the general public, and offensive to public policy.

79. Defendant's acts and practices were likely to deceive Plaintiff and the public regarding their rights. Defendant failed to complete investigate the fraudulent transactions, denied transactions were fraudulent with no legitimate basis for doing so, placed the burden on Plaintiff and the general public to prove the transactions were unauthorized when the law requires the opposite, and failed to inform Plaintiff and the general public of their legal rights.

80. The business acts and practices of Defendant constitute fraudulent business practices because they are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

81. As a direct and proximate result of Defendant's acts and unfair practices, Plaintiff and the public were injured and lost money or property, including but not limited to, the harm suffered as a result of fraudulent transfers made their accounts with Defendant.

82. As a direct and proximate result of the acts and practices described herein, Defendant has received and collected substantial monies or property to which Defendant is not entitled. These illicit profits should be disgorged.

83. Defendant deals uniformly with a large volume of customers who dispute unauthorized charges. For example, Defendant's misconduct as set forth above is part of uniform policy and practice, as reflected in its standardized, boilerplate form communications. Each of Defendant's deceptive acts and practices set forth above therefore have a broad impact on consumers.

84. The harm these practices caused to Plaintiff and the general public outweigh their utility, if any.

85. Plaintiff is entitled under the UCL to enjoin these acts and practices and to obtain restitution of all funds obtained by Defendant by reason of and through the use of these unlawful and fraudulent acts and practices. Pursuant to the UCL, Plaintiff, individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendant's unlawful and fraudulent business acts and practices are entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, real or personal, which Defendant acquired by means of such unlawful, unfair and fraudulent business practices.

86. The unlawful, unfair, and fraudulent business acts and practices of Defendant described herein present a continuing threat to Plaintiff and the public in that Defendant is currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by this Court.

87. In addition, Plaintiff is entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure §1021.5.

COMPLAINT - 11

1     **WHEREFORE**, Plaintiff respectfully prays for relief as set forth below:

2     A.    An award of actual damages, including but not limited to the amount of the unauthorized charges (and all associated interest, fees and costs), and emotional distress;

    B.    An award of statutory damages;

    C.    An award of punitive damages;

    D.    An award of treble damages;

    E.    An order of restitution;

    F.    Pre-judgment interest;

    G.    Attorneys' fees, costs, and expenses;

    H.    An order finding and declaring that Defendant's acts and practices as challenged herein are unlawful, unfair, and fraudulent;

    I.    Injunctive relief pursuant to California Business and Professions Code §17203, prohibiting Defendant from continuing its unlawful conduct, including but not limited to prohibiting Defendant from (a) denying an unauthorized transaction dispute without first conducting a reasonable inquiry into the allegedly unauthorized transaction and reasonably finding that the transaction was authorized; and (b) denying any request to reverse allegedly unauthorized transactions without notifying the accountholder of the accountholder's right to reproductions of all documents on which Defendant relied in reaching its decision.

    J.    For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

//
//
//
//
//

COMPLAINT - 12

RESPECTFULLY SUBMITTED AND DATED this 14th day of March, 2022.

MORGAN & MORGAN

By: /s/ Michael F. Ram, CSB #104805
    Michael F. Ram, CSB #104805
    711 Van Ness Avenue, Suite 500
    San Francisco, California 94102
    Telephone: (415) 358-6913
    Facsimile: (415) 358-6923
    Email: mram@forthepeople.com

By: /s/ Beth E. Terrell, CSB #178181
    Beth E. Terrell, CSB #178181
    Email: bterrell@terrellmarshall.com
    Erika L. Nusser, *Pro Hac Vice Forthcoming*
    Email: enusser@terrellmarshall.com
    TERRELL MARSHALL LAW GROUP PLLC
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Daniel A. Schlanger, *Pro Hac Vice Forthcoming*
    Email: dschlanger@consumerprotection.net
    SCHLANGER LAW GROUP LLP
    80 Broad Street, Suite 1301
    New York, NY 10004
    Telephone: (212) 500-6114
    Facsimile: (646) 612-7996

*Attorneys for Plaintiff*

COMPLAINT - 13